ROSARIA BELLANTONI and JOHN BELLANTONI, as Administrators, etc., of PASQUALE BELLANTONI, Appellants, *v.* THOMAS & BUCK-LEY HOISTING COMPANY, Respondent.

First Department, November 17, 1922.

Negligence — action for death of plaintiffs' intestate — intestate was employed by subcontractor on building — intestate's fall down elevator shaft was caused by sudden starting of hoist operated by defendant's engineer — defendant contracted with principal contractor to supply hoist and engineer to operate it — subcontractor required to use hoist — question of fact presented as to negligence and contributory negligence — question for jury as to defendant's liability for acts of engineer.

In an action to recover for the death of plaintiffs' intestate the evidence raised an issue of fact on the questions of negligence and contributory negligence which should have been submitted to the jury, where it appeared that the decedent was employed by a subcontractor on a building at the time of his death; that the defendant, under a contract with the principal contractor, furnished hoists together with appliances and engineers for use in the con-struction of the building subject to the principal contractor's authority and direction; that it was agreed between the defendant and the principal contractor that the subcontractor should use defendant's hoists; that the decedent's employer made arrangements with representatives of the principal contractor to use defendant's hoists and engineers; that the decedent and other employees were on the hoist and the usual signal to descend was given and when the hoist reached the floor at which the employees wished to stop the decedent gave the signal to the engineer to stop by pulling the bell rope and the hoist stopped about one foot above the floor; that as the decedent was leaving the hoist it started with a quick jerk throwing him down the shaft, and that no signal to start was given by decedent or his companions at that time.

There was sufficient evidence to require a submission to the jury of the question of defendant's liability for the acts of the engineer in charge of the hoist in question.

APPEAL by the plaintiffs, Rosaria Bellantoni and another, from a judgment of the Supreme Court in favor of the defendant,

entered in the office of the clerk of the county of New York on the 3d day of January, 1922, upon the dismissal of the complaint by direction of the court at the close of the plaintiffs' case.

*Joseph A. Byrne* [*Grant C. Fox* of counsel], for the appellants.

*G. Everett Hunt* [*Walter G. Evans* of counsel], for the respondent.

DOWLING, J.:

This action was brought to recover damages for the death of plaintiffs' intestate, who was killed on March 22, 1921, while in the employ of the Masten Construction Company in a building known as the Munson Building and located at 67 Wall street. His employer, the Masten Construction Company, was a subcontractor for the concrete work on the building, having a contract with the George A. Fuller Company, the general contractor, for such work. The defendant herein, while not a subcontractor on the building, had a written contract with the George A. Fuller Company whereby it leased to the latter certain hod hoists together with all appliances and engineers. Under this contract the defendant agreed to lease, install and maintain in good working order two wheelbarrow electric hoists (forty to fifty horse power) for the hoisting of brick and mortar in new buildings at the rate of twenty-two dollars per day, to be furnished complete, including motor, cages, cable, current and engineers, all subject to the Fuller Company's authority and direction. The rate was based on an eight-hour day for engineers' time, and in case of overtime it was to be at the same rate, plus the extra cost for the overtime of engineers. If the wages of engineers were raised from the present rate during the term of the contract, such increase was to be added to the contract price. The hoists were to be raised from story to story as the building progressed, and defendant was to be notified of necessary repairs which it agreed to make without expense. Rates were specified of twenty-four dollars per day for special tandem lumber hoists, and twenty-two dollars per day for steam hoists, the same conditions applying. The Fuller Company was to do the electric wiring from the supply to the motors. The agreement was based on the understanding that the defendant was to have all the work of the Fuller Company in Greater New York for a period of one year. The defendant was also given the privilege of dealing directly with the subcontractor for the hoisting it might do for them on the work, and it was agreed that the Fuller Company was to specify that its subcontractor should use on all its work the defendant's hoists.

The superintendent for the Masten Construction Company (the employer of the deceased) testified that he had made the arrange-

First Department, November, 1922.    [Vol. 203

ment for the use of the hoist in question with Mohr and Quinn, who were employees of the Fuller Company, and that the rate fixed was three dollars and fifty cents an hour for the use of a platform hoisting machine, with the engineer in charge thereof.

The hoist so hired belonged to defendant and was installed under its general contract with the Fuller Company. It was operated by an engineer named James Gilhooley at the time of the accident. Deceased and other employees of the Masten Company were on the hoist, which had left the twenty-third or twenty-fourth floor of the building, bringing with them a canvas to be carried to the eighteenth floor. The usual signal to descend, with some one on the hoist, had been given by pulling the bell rope four times. When the hoist reached the eighteenth floor, deceased gave the signal to the engineer to stop by pulling the bell rope once and the hoist stopped about a foot above the eighteenth floor. The deceased started to leave the hoist, and had one foot thereon and one on the floor, helping his fellow-workmen to push the canvas off the platform, when the hoist started with a quick jerk, throwing him down the shaft. It went up four or five feet and then stopped again. No signal had been given by deceased or his companions to start or stop the car at this time, and witnesses testified that they had not heard any bell then, nor seen the signal rope move.

Upon the questions of negligence and contributory negligence we are of the opinion that an issue of fact was raised, requiring the submission thereof to the jury.

The only remaining question is whether defendant is liable for the acts of Gilhooley, the engineer in charge of the hoist at the time in question. It is defendant's contention that plaintiffs failed to show that Gilhooley was in their employ, and it contends as well that even if he was in their general employ, he was *ad hoc* the servant of the Fuller Company. Plaintiffs proved that the hoist belonged to defendant; that it had been leased by it to the Fuller Company with the services of an engineer furnished by it; that it furnished itemized bills to the Fuller Company of the amount due for the use of its hoists, containing the days and hours of engineer's service " straight time " and " overtime," and the name of the engineer in actual charge of the hoist; and that the bill for the use by the Masten Company of the hoist in question on March twenty-second was rendered to the Fuller Company and charged by it against its subcontractor, the Masten Company.

The slip for the charge of the use of the hoist on March twenty-second (one-half day), made out by the defendant and signed by its foreman, bears the name of J. Gilhooley as engineer.

It is true that Quinn, an employee of the Fuller Company, had

charge of " the disposition of the machines," as a witness said, but the same witness testified that defendant had a superintendent who came around to inspect the machines; that it had five, six or seven engineers there, each operating an engine, and that while Quinn would tell the engineers who wanted to use the hoist on the following day, the witness was unwilling to say that Quinn instructed the engineers as to what work they were supposed to do.

Defendant furnished the hoisting machine to the Fuller Company, with the services of the engineer to operate it, under an agreement by which no other machine was to go into the buildings and the sub-contractors were to be required to use defendant's hoist. This agreement was in fact enforced, and thereunder the Masten Company obtained the temporary use of the defendant's hoist and the services of an engineer from the Fuller Company, as contemplated by the contract between it and defendant; and there was documentary evidence justifying the inference that Gilhooley, the engineer in charge of the hoist at the time of the accident, was then in defendant's employ. For these reasons, I am of the opinion that there was sufficient evidence to require the submission to the jury of the question of defendant's liability for the acts of Gilhooley. (*Genovesia* v. *Pelham Operating Co.*, 130 App. Div. 200.)

The judgment appealed from should be reversed and a new trial ordered, with costs to the appellants to abide the event.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellants to abide the event.