[Civ. No. 6713. Second Appellate District, Division One.—September 3, 1931.]

MAMIE E. SCRIMSHER et al., Appellants, v. RELIANCE ROCK COMPANY (a Corporation), Respondent.

F. Ray Risdon, J. L. Kearney and James D. Randles for Appellants.

Bauer, Wright & MacDonald, Bauer, MacDonald, Schultheis & Pettit and Fred E. Pettit, Jr., for Respondent.

HOUSER, J.—From the record herein it appears that one Scrimsher while working in the course of his employment received injuries (which later resulted fatally to him) from the negligent operation of a power shovel, which Scrimsher's employer, Oswald Brothers, had rented from the defendant Reliance Rock Company. On the trial of the action brought by the widow and guardian *ad litem* of the children of the deceased against one Robert C. Barnes, who was the workman in charge of the power shovel (and who hereinafter is termed the operator or engineer), and the Reliance Rock Company, at the close of the evidence presented by the plaintiffs an order of nonsuit was entered in favor of Reliance Rock Company; and it is from the resultant judgment that the appeal herein is prosecuted.

From an examination of the reporter's transcript of the record of proceedings at the trial of the action, for the

purpose here involved, it appears that the power shovel in question was the property of the defendant Reliance Rock Company; that about three weeks prior to the date of the accident Oswald Brothers rented the power shovel from Reliance Rock Company at an agreed compensation of $5 per hour, which included the services of an engineer to operate the same. Relating to the hiring of the power shovel and its operation during the time immediately preceding as well as at the time when the accident occurred, the testimony given by one of the members of the firm of Oswald Brothers shows that he inquired of a salesman of Reliance Rock Company if Oswald Brothers "could get the use of it (the power shovel), and he said he thought I could, so he went back to his office and came back and said I could get the use of it". At that particular time nothing was said "about whose engineer would run it". But later, "I (the witness) think I called him at that time and asked him if he could not get an operator for me, and he said he thought he could. . . . I told him to try and get one. . . . I asked him if he could get an operator for it, and he said he thought he could."

Also, as shown by the testimony given by the same witness, Oswald Brothers did not hire the operator of the shovel.

"Q. And the Reliance Rock Company furnished the engineer? A. Well, I guess they did. . . . Q. When did you hear from him (the representative of Reliance Rock Company), if at all, with reference to whether he could get you a man or not? A. Well, I didn't hear after that at all. The next day the shovel was operating, so I imagine the man was there."

The arrangements made between the operator of the shovel and Reliance Rock Company were shown by the testimony given by the former as follows: "Q. How did you happen to go on the job? A. Well, Birney Hodges (representative of Reliance Rock Company) came down to my house June 23rd, I believe it was, and asked me if I wanted to go to work, said he had a job working for Oswald Brothers unloading—unloading sand and gravel for Oswald Brothers. I asked him if it would be a pretty steady job and he said yes. . . . Q. What did you say to him? A. I told him I

would go to work, yes. Q. And you went to work the next morning? A. Yes, sir."

The record further shows that the name of the operator was not carried as an employee on the books of Oswald Brothers.

"Q. And you (Oswald Brothers) never did pay for the services of the engineer aside from the rental for the shovel? A. Well, we never carried him, no. The bill came in and we paid the bill. Q. Whom did you pay it to? A. The Reliance Rock Company."

The fact stands admitted in the record that Reliance Rock Company originally paid for the services of the operator of the power shovel, and that the compensation later paid by Oswald Brothers to Reliance Rock Company for the use of the shovel included the compensation paid by the latter to the operator thereof for his services. The record herein is silent as to the existence of any agreement between Reliance Rock Company and Oswald Brothers to the effect that in any way the former surrendered or resigned control of its employee other than that Oswald Brothers had authority to direct him "what to do in the performance of the work". (*Billig* v. *Southern Pac. Co.*, 189 Cal. 477, 485 [209 Pac. 241, 244].)

In determining the question of whether a nonsuit should be granted, some of the settled principles of law which should be taken into consideration are that:

"Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiff. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. . . . The plaintiff must also be given the benefit of every piece of evidence which tends to sustain his averments and such evidence must be weighed in the light most favorable to plaintiff's claim. . . . The evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint, the motion, if made upon the close of the case should be denied.' " (Citing cases.) (*Rabe* v. *Western Union Tel. Co.*, 198 Cal. 290, 294 [244 Pac. 1077].)

■ Considering that one of the issues in the action upon which depended the case for the plaintiffs as against the defendant Reliance Rock Company was whether the operator of the power shovel at the time of the happening of the accident was an employee of said defendant,—by application of the principles of law to which attention hereinbefore has been directed which relate to the determination of a motion for nonsuit, it becomes apparent that for such purpose the evidence introduced by the plaintiffs on the trial of the action, if it did not clearly establish the fact itself, readily would admit of the inference that the operator of the power shovel was an employee of the defendant Reliance Rock Company at the time in question.

■ Although it may be admitted that in some jurisdictions an employer who lends his employee, together with some instrumentality within his control, to another for the performance either of a general or a special undertaking is freed from liability arising from the negligence of such employee, generally speaking the rule in this state, as attested by many authorities, is to the contrary.

In the case of *Stewart* v. *California Improvement Co.*, 131 Cal. 125 [52 L. R. A. 205, 63 Pac. 177, 724], it appeared that an engineer was employed and paid by the defendant corporation to operate a steam roller which, with the services of such engineer, had been hired at a *per diem* rate by a city from the defendant corporation. In an action for damages for personal injury which arose from the alleged negligence of the engineer, it was held that the engineer was the servant, not of the city to which his services had been lent, together with the steam roller, but of the defendant corporation, and that the latter was liable for such damages as resulted to the plaintiff from the negligent operation of the roller.

In the case of *Billig* v. *Southern Pac. Co.*, *supra*, a situation was involved similar to that here under consideration, and the doctrine announced in *Stewart* v. *California Improvement Co.*, *supra*, was affirmed. Among other things, it is there said:

"Whatever the rule and its variations may be in other jurisdictions, it is the settled rule of law in this state, applicable to cases of the character under consideration here, that a general employer is not freed from responsibility for

the negligent acts of an employee merely because the employee has been hired out by the employer to a third person to be used by the latter in the performance of his work. . . . ''

And reiterating the principle, the court also said:

"It would appear, therefore, to be the rule in this state that when a master hires out, under a rental agreement, the services of an employee for the operation of an instrumentality owned by the master, together with the use of the instrumentality, without relinquishing to the hirer the power to discharge such servant, to go where and perform such work as the hirer directs, the legal presumption is that, although the hirer directs the servant where to go and what to do in the performance of the work, the servant, as the operator of the instrumentality employed in the doing of the work, remains, in the absence of an agreement to the contrary, the servant of the general employer in so far as concerns the manner and method of operating the instrumentality, and the negligence of the servant must be held to be that of the owner and not that of the hirer of the instrumentality.'' (Citing authorities.)

To the same effect, see *Umsted* v. *Scofield Engineering Const. Co.*, 203 Cal. 224 [263 Pac. 799]; *Peters* v. *United Studios*, 98 Cal. App. 373 [277 Pac. 156]; *Valdick* v. *LeClair*, 106 Cal. App. 489 [289 Pac. 673].

It follows that the judgment herein should be reversed. It is so ordered.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 1, 1931.