[Civ. No. 5379.   Third Appellate District.—November 22, 1935.]

MYRTLE HILLIARD et al., Respondents, v. ALEXANDER FABRICIUS et al., Appellants.

Len H. Honey for Appellants.

Daniel W. Burbank, C. F. Laumeister and Louis T. Milburn for Respondents.

MAXEY, J., *pro tem.*—This action was brought by the surviving wife and son of Lester Hilliard, seeking damages for injuries sustained by Lester Hilliard on December 11, 1933, that resulted in his death.

The defendant, Fabricius, was a truck driver, and on the 11th day of December, 1933, was driving and operating an International motor truck belonging to the defendants, Biasotti, Willard & Biasotti. It is alleged in the complaint, and admitted by appellants, that the accident resulting in the death of Lester Hilliard was occasioned by the careless and negligent operation of the truck by Fabricius. The defendants, Biasotti, Willard & Biasotti, are a copartnership consisting of Louis Biasotti, Frank Willard and Allie Biasotti. The copartnership was originally alleged to consist of Louis Biasotti, Frank Willard and Louis Lovotti. During the course of the trial it was developed by the evidence that this firm had been succeeded by the present firm of Biasotti, Willard & Biasotti; that Allie Biasotti had succeeded to the interests of Louis Lovotti; and that Louis Lovotti was not concerned with said action. Thereupon, the court permitted the plaintiff to file an amended complaint to conform to the proof, which amended complaint prayed for damages against Biasotti, Willard & Biasotti instead of the former firm or copartnership of Biasotti, Willard & Lovotti. The copartnership of Biasotti, Willard & Biasotti was engaged in the general contracting business at Stockton, California, and in connection with its business owned several motor trucks used in transporting highway materials.

The jury returned its verdict against all of said defendants for the sum of $15,000. Upon defendant's motion for a new trial, this amount was reduced to $12,000, and judgment entered for the latter amount. Defendants have appealed from the judgment so entered.

The points raised by appellants are:

1. Insufficiency of evidence to support implied finding of jury that Fabricius was a servant, agent or employee of Biasotti, Willard & Biasotti, at the time of the accident.

2. Insufficiency of evidence to support verdict of liability against Biasotti, Willard & Biasotti, as general employers

where Frederickson & Watson Company, as special employers, had the right of control over Fabricius at the time and place of the accident; and

3. Error by trial court in failing to instruct upon material issues.

Early in December, 1933, the defendant, Fabricius, applied to the defendants, Biasotti, Willard & Biasotti, for work as a truck driver, and was, at that time, informed that said defendants had no work for him, but they suggested that he communicate with Frederickson & Watson Construction Company in Mariposa County, and stated that the latter company might have need for men to drive trucks.

Frederickson & Watson Construction Company was engaged in surfacing the state highway in Mariposa County, at a point on the Carson cut-off of the all-year highway near Cathay. Frederickson Brothers were also interested in this contract with Frederickson & Watson Construction Company. Charles O. Frederickson was a member of the firm of Frederickson Brothers, but was not of the firm of Frederickson & Watson Construction Company; however, he was in charge of the particular work involved in this action for both firms. Mr. Frederickson visited the offices of Biasotti, Willard & Biasotti in Stockton, and there entered into negotiations for the rental of three motor trucks to be used in Mariposa County. He testified that the rental of these trucks agreed upon between himself and Louis Biasotti, one of the copartners, was $1.65 per hour, and in addition thereto, to supply the oil and gas used, and to pay the wages of the drivers of the trucks. He further testified that Mr. Biasotti stated to him that the copartnership would furnish its own drivers for the trucks.

Biasotti, Willard & Biasotti conditioned their trucks preparatory to sending them to the Frederickson & Watson job; they selected six men, two for each truck, to drive and operate the three trucks while engaged in this work. Mr. Willard called the drivers together, with the exception of Fabricius, and instructed them how to operate the trucks, giving them the strict injunction that they should not "dynamite" them, in other words that they should not misuse nor abuse the trucks in their operation. The five drivers had been in the employ of Biasotti, Willard & Biasotti previously, and Mr. Scott was the oldest employee of the five in point of

service. Fabricius had never been in the employ of the co-partnership.

Scott was instructed by the copartnership to have Fabricius accompany him on his truck to Mariposa, and the copartnership ordered Fabricius to accompany Scott; Fabricius joined Scott at Livingston and drove the truck to the plant of the Frederickson & Watson Company. Upon arriving at the plant of Frederickson & Watson Company, Mr. Frederickson inquired of Scott as to who was in charge of the trucks, and was informed that he (Scott) was in charge of the trucks and men. Scott then told Frederickson that Fabricius would drive the afternoon shift, and that he (Scott) would drive the morning shift. Frederickson then stated to Scott that it would be necessary to make some changes in the truck by removing the fenders and to increase the height of the side-boards. Mr. Frederickson testified that he had previously explained these changes to Mr. Louis Biasotti and that he had consented to the changes being made. Scott assisted in making these changes.

Frederickson showed Fabricius where the loading-hopper was located, and where the materials were to be taken, which point of unloading was a distance of approximately five or six miles from the loading plant. Fabricius then secured a load of road material and started for the point designated, lost control of the truck, collided with a road-roller being operated by Lester Hilliard, and as a result of the collision Lester Hilliard received injuries that caused his immediate death.

Allie Biasotti, one of the defendants, testified that no contract of employment was ever made between Fabricius and the copartnership to his knowledge. He did say, however, that he had told Fabricius to accompany Scott to the Frederickson & Watson job. The other members of the copartnership testified similarly. None of them had ever made any agreement concerning his employment with Fabricius. The testimony of Jensen was to the effect that the drivers for Biasotti, Willard & Biasotti took care of their trucks, and that the driver's time was conditioned upon the time the particular truck was in use; that no agreement concerning employment was ever made with Fabricius to the witness' knowledge. Fabricius, one of the defendants, testified that he had no agreement of employment with Biasotti, Willard & Biasotti, nor did he have

any agreement of employment with Frederickson & Watson Company, that he had no agreement of employment with anyone, but that he accompanied Scott at the direction or order of Biasotti, Willard & Biasotti, and at the request of Scott. On December 13, 1933, and again on December 20, 1933, Fabricius made statements to the effect that he was under the employ of and working for Biasotti, Willard & Biasotti. His testimony was indefinite and his statements were conflicting, and would support either contention herein advanced. During the time Fabricius was confined to the hospital, and during his convalescence, the compensation insurance carrier for Frederickson & Watson Company paid his wages and incidental expenses.

We have briefly summarized the testimony pertinent to the question of the employment of Fabricius. It shows such a conflict that the jury could with propriety resolve the conflicting statements in favor of the plaintiff; it shows conclusively that Fabricius was employed by Biasotti, Willard & Biasotti, if Frederickson's testimony is to be believed. The fact that Frederickson & Watson Company, either directly or indirectly, paid the wages and expenses of Fabricius while he was incapacitated does not detract from this view, because Frederickson & Watson Company had agreed with the copartnership to pay these wages as a part of the consideration for the rental of the trucks. The copartnership had retained a control over the drivers of the various trucks by instructing them as to the use thereof,—not to ''dynamite'' them.

The verdict of a jury will not be disturbed on appeal if there is any evidence to support its conclusion. There was ample evidence in this case to support the verdict as rendered.

Upon the conclusion herein reached, it is unnecessary to further consider the second question raised by appellants.

Appellants' third point is that the court erred in failing to instruct the jury upon material issues raised by the pleadings and evidence. Appellants' contention is based upon section 1714¼ of the Civil Code as it then existed. That section, however, was inapplicable where the relation of servant, agent or employee existed, and having concluded that the evidence would support such an implied finding by the jury, it is unnecessary to further consider this point. Nor is

this instruction contained in appellants' brief nor any similar instruction, called to our attention.

The judgment appealed from is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 21, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 20, 1936.