Filed 2/26/15

# IN THE SUPREME COURT OF CALIFORNIA

STATE OF CALIFORNIA ex rel. )
DEPARTMENT OF THE CALIFORNIA )
HIGHWAY PATROL, )
 )
  Petitioner, )
 )   S214221
 v. )
 )  Ct.App. 4/3 G047922
THE SUPERIOR COURT OF )
ORANGE COUNTY, )
 )   Orange County
  Respondent; ) Super. Ct. No. 30-2008-116111
 )
MAYRA ANTONIA ALVARADO et al., )
 )
  Real Parties in Interest. )
_____ )

   Under the Freeway Service Patrol (FSP) Act, motorists receive free emergency roadside assistance as a public service on California's busiest highways. (Sts. & Hy. Code, § 2560 et seq; Stats. 2000, ch. 513, § 1, pp. 3576-3577.) FSP tow trucks drive designated routes at peak traffic hours and respond to calls for assistance. The FSP program is jointly administered by the California Department of Transportation (Caltrans), the Department of the California Highway Patrol (CHP), and local transportation agencies. Caltrans manages statewide funding, planning, and coordination. CHP trains the tow truck drivers, supervises field operations, and may provide dispatchers. Local agencies contract

with privately owned tow services, which hire and assign the drivers and provide trucks that must be dedicated solely to the FSP program.

The Orange County Transportation Authority (OCTA) oversees a local program. It contracted with California Coach Orange, Inc. (California Coach) for FSP tow services, and with CHP for field supervision, program management, and oversight of contractor service quality. On January 16, 2008, a California Coach FSP tow truck driven by Joshua Guzman hit a car on Interstate 5, injuring Mayra Alvarado and her child. Alvarado sued Guzman, California Coach, CHP, Caltrans, and OCTA. CHP moved for summary judgment. For purposes of the motion, the parties stipulated that the sole theory of recovery against CHP was that it was Guzman's "special employer."

The trial court denied summary judgment, finding triable issues with respect to special employment. However, it granted CHP's request to certify a controlling question of law to the Court of Appeal: whether the statutes establishing the FSP program are inconsistent with a finding that CHP is the special employer of an FSP tow truck driver.[1] Ruling that CHP cannot be such a special employer as a matter of law, the Court of Appeal directed entry of summary judgment. We granted Alvarado's petition for review.

We agree with the Court of Appeal that the FSP statutes, as written, are incompatible with a special employment relationship between CHP and tow truck drivers. However, this conclusion does not foreclose the possibility that CHP might act as a special employer in particular circumstances. The statutes authorize

---

[1] Code of Civil Procedure section 166.1 authorizes trial courts to identify "a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation."

CHP to perform certain functions, but do not bar it from taking on other responsibilities. Our resolution of the question of law presented here does not rule out CHP's liability on the facts, which is a question beyond the scope of our review. Therefore, we reverse the Court of Appeal's judgment.

DISCUSSION

Under the common law, a special employment relationship arises when a " 'general' employer . . . lends an employee to another employer and relinquishes to [the] borrowing employer all right of control over the employee's activities." (*Marsh v. Tilley Steel Co.* (1980) 26 Cal.3d 486, 492 (*Marsh*).) "During this period of transferred control, the special employer becomes solely liable under the doctrine of respondeat superior for the employee's job-related torts. [Citations.]" (*Ibid.*) Nevertheless, not all special employment relationships are exclusive. "Where general and special employers share control of an employee's work, a 'dual employment' arises, and the general employer remains concurrently and simultaneously, jointly and severally liable for the employee's torts. [Citations.]" (*Id.* at pp. 494-495.)

Here, Alvarado contends CHP is liable as Guzman's special employer, while California Coach shares liability as his general employer. This argument raises novel issues. The parties cite no California case, and we have found none, in which an employee of a private contractor also qualified as a special public employee for purposes of vicarious liability.[2]

_____

[2] The special employment relationship has consequences beyond vicarious liability. The special employer becomes liable for workers' compensation benefits, and those benefits become the employee's exclusive remedy against the employer for workplace injuries. (*Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d 168, 175.) A special public employee is entitled to assert claims under the Fair Employment and Housing Act (Gov. Code § 12940 et seq.; *Bradley v. Department*

*(Footnote continued on next page.)*

Under the Government Claims Act, a public entity is *not* liable "[e]xcept as otherwise provided by statute." (Gov. Code, § 815; *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932.) If the Legislature has not created a statutory basis for it, there is no government tort liability. (*Hoff*, at p. 932.) The Government Claims Act includes a broad provision for liability in respondeat superior: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . ." (Gov. Code, § 815.2, subd. (a).) Public employees are liable for their torts "to the same extent" as private persons, absent statutory provision to the contrary. (Gov. Code, § 820, subd. (a).) Thus, public entities are generally liable for the torts of their employees to the same extent as private employers. (*Hoff*, at p. 932.)

The question here is whether FSP tow truck drivers qualify as public employees. The Government Claims Act specifies that the term " '[e]mployee' includes an officer, . . . employee, or servant, whether or not compensated, but does not include an independent contractor." (Gov. Code, § 810.2.) The Legislature drafted this definition with care. According to a Senate committee report, " '[e]mployee' was originally defined (in the bill as introduced) to include

*(Footnote continued from previous page.)*

*of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1612, 1627), and may raise defenses available to government employees in actions by third parties (*Wilson v. County of San Diego* (2001) 91 Cal.App.4th 974, 983-985). Also, in some circumstances a special public employee may be entitled to benefits under the California Public Employees' Retirement System. (See *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 499-500.)

'an officer, agent, or employee,' but not an 'independent contractor.'  By amendment, the word 'servant' was substituted for 'agent' because (1) 'servant' was considered more appropriate than 'agent' when used in a statute relating to tort liability and (2) the public entities feared that to impose liability upon public entities for the torts of 'agents' would expand vicarious liability to include a large indefinite class of persons and 'servant' was believed to be more restrictive than 'agent.' "  (Legis. Com. com., reprinted at 32 pt. 1 West's Ann. Gov. Code (2012 ed.) foll. § 810.2, p. 193.)

Alvarado argues that Guzman falls under the statutory definition of "employee" because he was CHP's "servant."  (Gov. Code, § 810.2.)  Our consideration of this claim is limited to whether the roles set out in the FSP statutes are consistent with a special employment relationship between CHP and tow truck drivers.  We conclude they are not.

The FSP statutes are found primarily in Streets and Highways Code section 2560 et seq. and Vehicle Code section 2430 et seq.  Vehicle Code section 2430.1 provides these relevant definitions:

"(a) 'Tow truck driver' means a person who operates a tow truck, who renders towing service or emergency road service to motorists while involved in freeway service patrol operations, pursuant to an agreement with a regional or local entity, and who has or will have direct and personal contact with the individuals being transported or assisted. . . .

"(b) 'Employer' means a person or organization that employs those persons defined in subdivision (a), or who is an owner-operator who performs the activity

5

specified in subdivision (a), and who is involved in freeway service patrol operations pursuant to an agreement or contract with a regional or local entity."**3**

Thus, to qualify as an employer under section 2430.1(b), a person or organization must (1) employ a tow truck driver, or own and operate a tow truck, and (2) participate in an FSP program by agreement with a local entity. It is arguable that CHP would satisfy the second requirement. We need not resolve that question, however, because it is plain that the Legislature did not consider CHP to be an organization that employs tow truck drivers. We construe the statutory definition in the context of the scheme to which it belongs. (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.) Elsewhere in the FSP statutes, the Legislature repeatedly distinguished between "employers" and CHP. For example:

Streets and Highways Code section 2562.2, subdivision (c)(1) requires Caltrans to prepare guidelines for the FSP program, addressing among other topics "[g]rants to be awarded to a regional or local agency applicant on a competitive basis for contracting with an employer for the provision of a new or expanded freeway service patrol service *and* for contracting with [CHP] for the provision of *only* direct supervisory services warranted by workload standards to reduce traffic congestion." (Italics added.)

Vehicle Code section 2430.5, subdivision (c) requires "[e]very employer" to "maintain a tow truck driver certificate file" as well as a "personnel roster," both of which must be made available for CHP inspection at the employer's primary place of business.

---

**3** Hereafter, we sometimes refer to Vehicle Code section 2430.1, subdivision (b) as section 2430.1(b).

Vehicle Code section 2436.5, subdivision (a) requires CHP to "provide training . . . for all employers and tow truck drivers who are involved in freeway service patrol operations pursuant to an agreement or contract with the regional or local entity" and states that "[d]ispatchers for freeway service patrol operations shall be employees of [CHP] or [Caltrans]."

Obviously, the Legislature did not contemplate that local agencies would contract separately with CHP as an "employer" for FSP services, and as a state agency for supervisory assistance. (Sts. & Hy. Code, § 2562.2, subd. (c)(1).) Nor would it have directed CHP to make personnel rosters available at its headquarters for its own inspection. (Veh. Code, § 2430.5, subd. (c).) Vehicle Code section 2436.5 is especially telling. In the same paragraph, it specifies that CHP is to provide training for "employers and tow truck drivers" and that only state employees may dispatch FSP trucks. (Veh. Code, § 2436.5, subd. (a).) These arrangements presume that tow truck drivers are not state employees, but work instead for the "employers" that contract with local entities to provide FSP services to motorists. (*Ibid.*)

Alvarado concedes that the definition of "employer" in section 2430.1(b) applies to tow service providers rather than to CHP. She contends, however, that the Legislature used the term "employer" merely for purposes of allocating administrative responsibilities within the FSP program. She notes that in *Metropolitan Water Dist. v. Superior Court*, *supra*, 32 Cal.4th at page 500, we held that the common law test of employment applies when a statute refers to "employees" without defining the term. But that is not the circumstance here. The FSP statutes *do* define "employer," and give the term a special meaning that does not apply to CHP. "If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts." (*Curle v. Superior Court*, *supra*, 24 Cal.4th at p. 1063.)

7

Alvarado also suggests the statutory definition may be read as applying only to tow service providers as general employers, without affecting CHP's tort liability as a special employer. She relies on the interpretive rule that the Legislature is deemed to be aware of existing law when passing legislation, and to have acted in the light of case law having a direct bearing on the matter at hand. (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 146.) The argument fails. Nothing in Vehicle Code section 2430.1 indicates that the Legislature distinguished general from special employment when it defined "employer." Nor does its presumptive awareness of the dual employment doctrine support a conclusion that it intended to create a statutory basis for CHP liability as a special employer. In Vehicle Code section 2430.3, subdivision (a), the Legislature implicitly recognized that a driver may have more than one employer, but did not treat CHP as one of them. That provision requires "[e]very freeway service patrol tow truck driver" to "notify *each* of his or her employers and prospective employers *and* [CHP] of an arrest or conviction . . . ." (Italics added.) The more reasonable view, assuming the Legislature had common law employment principles in mind when it established the FSP program, is that it meant to protect CHP from vicarious liability as an "employer" by excluding it from the definition provided in section 2430.1(b).

Presumptions of common law awareness aside, the role laid out for CHP in the FSP statutes does not match the criteria for special employment. It is settled that the right to control job performance is the primary factor in determining any employment relationship, including special employment. "The special employment relationship and its consequent imposition of liability upon the special employer flows from the borrower's power to supervise the details of the employee's work." (*Marsh*, *supra*, 26 Cal.3d at p. 492; see *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 531.)

8

Before reviewing CHP's functions in the FSP program, we note that any government agency responsible for making sure that private contractors conform with the requirements of a project necessarily exerts some control over how those contractors and their employees do their jobs. However, an agency does not become the special employer of contractors' employees merely by ensuring compliance with statutory, regulatory, or contractual requirements. Furthermore, when an agency has responsibilities over law enforcement and matters of public safety, as CHP does, the mere performance of police operations does not create an employment relationship.

As we have noted, the Legislature contemplated generally that local agencies would contract with "employer[s]" for the provision of FSP services, and contract with CHP "for the provision of *only* direct supervisory services warranted by workload standards to reduce traffic congestion." (Sts. & Hy. Code, § 2562.2, subd. (c)(1), italics added.) CHP's specific statutory responsibilities include conducting criminal background checks of tow truck drivers and employers (Veh. Code, § 2431), establishing training standards (Veh. Code, § 2435, subd. (b)), and providing the training itself (Veh. Code, § 2436.5). CHP employees may also dispatch FSP tow trucks. (Veh. Code, § 2436.5, subd. (a).) The statutes do not state that CHP officers may direct tow truck drivers when an officer is present while roadside assistance is provided, but that right is fairly inferable. It is also expressly set out in the agreement between OCTA and CHP.[4]

---

[4] Vehicle Code section 2435, subdivision (a) provides that CHP "may enter into agreements with employers for freeway service patrol operations under an agreement or contract with a regional or local entity." It is unclear what kind of CHP agreements the Legislature had in mind here. Multiple provisions establish that it is the regional or local entities that establish an FSP program by awarding contracts to tow service providers. (Sts. & Hy. Code, §§ 2561.5, subd. (e), 2562.2,

*(Footnote continued on next page.)*

9

These roles, vital to the functioning of the FSP program, are essentially governmental. Moreover, CHP's authority to direct FSP tow truck drivers in the field is an aspect of its ordinary duty to provide for public safety. Quite apart from the FSP program, it is CHP's responsibility to patrol the highways and direct traffic in emergencies. (Veh. Code, §§ 2401, 2410.) CHP is independently authorized to make agreements with tow service providers to respond to an officer's summons "when . . . necessary for public assistance or to carry out the duties and responsibilities of [CHP]." (Veh. Code, § 2424, subd. (a).) CHP's right to direct the activities of tow truck drivers in that setting is implicit, just as it is under the FSP statutory scheme. But in both contexts, the right of control arises not from an employment relationship, but from CHP's mission as the government agency most directly responsible for ensuring highway traffic safety. Its exercise of authority in that capacity is a police power, not an employer's prerogative.

Thus, CHP's right to control some aspects of towing operations does not confer upon it the status of a special employer. That conclusion does not end our inquiry, however. The common law also recognizes factors secondary to the right of control. We have looked to other considerations discussed in the Restatement of Agency to assess whether an employer-employee relationship exists. (*Ayala v. Antelope Valley Newspapers, Inc.*, *supra*, 59 Cal.4th at p. 532 [citing Rest.3d Agency, § 7.07, com. f, pp. 210-211, and Rest.2d Agency, § 220, subd. (2)]; see *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350-351 [citing Rest.2d Agency, § 220 and noting that the right of control is

_____

*(Footnote continued from previous page.)*

subd. (c)(1); Veh. Code, §§ 2430.1, subd. (b), 2436.5, subd. (a), 2436.7, subd. (a).) No agreement between CHP and California Coach appears in this record.

10

not the sole consideration].)  The comments to section 227 of the Restatement Second of Agency, which covers servants lent by one master to another, note that "[m]any of the factors stated in Section 220 which determine that a person is a servant are also useful in determining whether the lent servant has become the servant of the borrowing employer."  (Rest.2d Agency, § 227, com. c, p. 501.) [5] The secondary Restatement factors that we have adopted are:

" '(a) [W]hether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.' [Citations.]"  (*Ayala v. Antelope Valley Newspapers, Inc.*, *supra*, 59 Cal.4th at p. 532.)

We have identified a similar list of factors specific to the special employment context, framing them as conditions in which such a relationship is

---

[5]      In *Societa per Azioni de Navigazione Italia v. City of Los Angeles* (1982) 31 Cal.3d 446, 460, we cited the Restatement Second of Agency in discussing whether a dual employment arose between the City of Los Angeles and a shipowner with respect to a negligent harbor pilot.  The pilot was a city employee. In an analysis heavily influenced by maritime law, we determined that he was the shipowner's special employee, while the city remained liable as his general employer.  (*Societa per Azioni de Navigazione Italia*, at pp. 455-462.)
        See also the Restatement Third of Agency, section 7.03, comment d, subdivision (2), page 154.

11

*not* indicated. "California courts have held that evidence of the following circumstances tends to negate the existence of a special employment: The employee is (1) not paid by and cannot be discharged by the borrower, (2) a skilled worker with substantial control over operational details, (3) not engaged in the borrower's usual business, (4) employed for only a brief period of time, and (5) using tools and equipment furnished by the lending employer. [Citations.] Additionally, where the servants of two employers are jointly engaged in a project of mutual interest, each employee ordinarily remains the servant of his own master and does not thereby become the special employee of the other. [Citations.]" (*Marsh*, *supra*, 26 Cal.3d at p. 492-493.)

These considerations are truly secondary here, given our conclusion that the primary factor, the right of control, weighs firmly against a finding of special employment. We observe, however, that CHP does not pay FSP tow truck drivers, who perform at least semi-skilled work in a distinct occupation with equipment provided by the tow service providers. Drivers necessarily exert control over towing operations whenever CHP officers are not present. Nor would drivers or CHP reasonably deem their relationship to be one of employment under the statutory scheme. CHP does not select drivers, or even service providers, to participate in an FSP program. It is the local transportation agency that contracts with providers. The providers hire their own drivers, and decide which ones to assign to the program and for how long. The providers are obligated to provide qualified drivers, but free to replace individual drivers with others who meet FSP requirements. (Veh. Code, § 2430.5; see *Doty v. Lacey* (1952) 114 Cal.App.2d 73, 78 [special employment is not indicated when " 'the general employer may at any time substitute another servant,' " quoting Rest. Agency, § 227, p. 501; see Rest.2d Agency, § 227, com. c, p. 501].)

Nor are tow services a part of CHP's usual business in an integral sense. The FSP statutes provide that CHP, "in cooperation with [Caltrans], is responsible for the rapid removal of impediments to traffic on highways within the state." (Veh. Code, § 2435, subd. (a).) Yet CHP officers do not normally perform the tasks of FSP tow truck drivers, which include "changing a flat tire, 'jump starting' a dead battery, repairing hoses, refilling radiators, and providing a gallon of fuel" as well as "a tow to a predetermined safe location off the freeway." (Stats. 2000, ch. 513, § 1, subd. (d), p. 3577.) In the FSP program and in other contexts, CHP relies on contractors to perform tow services. It is true that FSP tow trucks are required to "bear a logo . . . which identifies [CHP and Caltrans], and, at the option of the entity, the participating regional or local entity." (Sts. & Hy. Code, § 2562.5.) This requirement does not, however, make the tow trucks a part of CHP's fleet. The logo simply informs motorists, who may not have summoned a tow truck themselves, that they are receiving a public service.

As we noted long ago, "[t]he principal justification for the application of the doctrine of respondeat superior in any case is the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business." (*Johnston v. Long* (1947) 30 Cal.2d 54, 64, italics omitted; accord, *Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960.) Here, it is the tow service providers who are in the business of roadside assistance. They are acquainted with its peculiar risks, and in the best position to mitigate them by hiring carefully, firing when appropriate, obtaining insurance, and adjusting their

13

bids for FSP contracts to account for potential liabilities.[6] CHP's statutory role in the FSP program is a limited one, and reflects its function as a police agency.

We conclude that the language of the statutory scheme does not support a finding that CHP is the special employer of FSP tow truck drivers. However, this holding does not eliminate the possibility that CHP might act as a special employer if it takes on responsibilities beyond those outlined in the FSP statutes. It is authorized to make its own agreements with tow service providers, in addition to the primary contracts between providers and local transportation agencies. (Veh. Code, § 2435, subd. (a); see fn. 4, *ante*, at p. 9.) Conceivably, pursuant to that authority or otherwise, CHP might agree to a role that would bring it within the scope of the special employment doctrine.

The Court of Appeal erred by ruling that the FSP statutes categorically bar CHP from acting as a special employer. The trial court, informed by our conclusion that the statutory scheme is inconsistent with a special employment relationship between CHP and tow truck drivers, must determine whether the facts of this case might nevertheless support liability.

---

[6] The agreement between OCTA and California Coach requires California Coach to obtain insurance with minimum limits, and to include OCTA and the state as additional insureds.

DISPOSITION

We reverse the Court of Appeal's judgment, and remand for further proceedings.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**BAXTER, J.\***
**HILL, J.\*\***

_____

\*       Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

\*\*       Presiding Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY WERDEGAR, J.**


I join fully in the court's conclusion that the role the Freeway Service Patrol Act contemplates for the Department of the California Highway Patrol (CHP) does not suggest CHP is a special employer of tow truck drivers participating in the freeway service patrol program. (Maj. opn., *ante*, pp. 8–14.) I further agree that, given the procedural posture of this case, it is premature to say categorically CHP did not act as a special employer here without permitting plaintiffs the opportunity to present evidence demonstrating such a role.

In my view, that should be enough to resolve the instant case. We need not opine on whether the Legislature had in mind potential exposure to vicarious liability under common law employment principles when it established the freeway service patrol program. (Maj. opn., *ante*, pp. 6–8.) To the extent the majority opinion does, I cannot agree with its conclusions.

As the majority opinion recognizes, the limits on state tort liability principally are governed by a different set of statutes from the Vehicle Code and Streets and Highways Code provisions at issue here. The Legislature in the Government Claims Act made state entities generally subject to respondeat superior liability to the same extent as private entities. (Gov. Code, §§ 815.2, subd. (a), 820; *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932.) "Through these statutes, 'the Legislature incorporated "general standards of tort liability as the primary basis for respondeat superior liability of public entities." ' "

(*Hoff,* at p. 932.)  Those general standards include the possibility of " 'special employer' " liability, which may arise when " 'either by the terms of a contract or during the course of its performance, the employee of an independent contractor comes under the control and direction of the other party to the contract,' " thereby creating " 'a dual employment relation' " with both the general and special employer.  (*Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d 168, 174–175.)

Consequently, absent some other statutory limit, CHP will be liable precisely to the same extent any other entity would be—on a case-by-case basis, upon proof that in a given setting respondeat superior applies.  An issue in this case is whether provisions in the Vehicle Code or the Streets and Highways Code contain such a statutory limit.  While I agree the statutory scheme does not alone impose on CHP the duties of a special employer, I cannot go further and embrace the majority's inference that these statutes were intentionally drafted specifically to limit vicarious liability.

A very short chapter of the Streets and Highways Code provides the principal rules governing the freeway service patrol program.  (Sts. & Hy. Code, div. 3, ch. 15, §§ 2560–2565.)  These statutes primarily regulate funding; their purpose "is to provide for the implementation of a freeway service patrol system using a formula-based allocation, referred to as baseline funding allocation, to all eligible regional and local agencies for traffic-congested urban freeways throughout the state, involving a cooperative effort between state and local agencies."  (*Id.*, § 2560.5, subd. (a).)  The term "employer," where it is used at all, is used descriptively to identify what may be thought of as a driver's general or direct employer, and to distinguish that entity from other entities involved in the program.  (E.g., *id.*, §§ 2562.2, subd. (c)(1), 2563.)  Nothing in the chapter suggests the Legislature thought about or intended in any way to address the potential scope of tort liability for various entities operating the program.

2

In turn, the Streets and Highways Code references and incorporates a short article of the Vehicle Code regulating tow truck drivers. (See Sts. & Hy. Code, §§ 2561, subd. (b), 2563; Veh. Code, div. 2, ch. 2, art. 3.3, §§ 2430–2432.3.) The definition of employer used there, and applicable to both the Vehicle Code and the Streets and Highways Code sections at issue, is again descriptive and circular, explaining that "employer" as used in these sections refers to "a person or organization that employs" tow truck drivers and contracts with local agencies to provide patrol services. (Veh. Code, § 2430.1, subd. (b).) The remainder of the article and article 3.5, immediately thereafter, spell out who has which duties (the driver, the employer, local agencies, CHP). As with the Streets and Highways Code chapter, there is nothing to suggest the Legislature intended the "employer" usage as a way of allocating or limiting potential tort liability, as opposed to descriptively allocating statutory duties in carrying out the roving tow truck program.[1]

The majority opinion focuses on the distinctions drawn throughout these provisions between "employers" and CHP. What it does not demonstrate is that these distinctions were drawn for purposes not only of allocating statutory duties, but also of limiting tort liability. For example, the majority opinion highlights Vehicle Code section 2436.5, which requires CHP to provide training to "all employers and tow truck drivers" and also specifies that "[d]ispatchers for freeway service patrol operations shall be employees of" CHP or the Department of Transportation. (See maj. opn., *ante*, p. 7.) In the context of the entire article, the

---

[1] The same is true of the legislative history. Nothing in the background underlying Assembly Bill No. 3346 (1991–1992 Reg. Sess.) indicates the Legislature had in mind eliminating respondeat superior liability that might otherwise attach.

3

statute seems to do no more than allocate to CHP the obligation of (1) training drivers and their immediate, general employers, and (2) hiring dispatchers as its own immediate, direct employees.  Nothing in the text suggests the language was also intended to alter the rules of respondeat superior or the applicability of the special employer doctrine in cases—if any—where those principles might apply.  I would not speculate that the Legislature had vicarious liability principles in mind, or that it sought by its use of terms to alter them.

In all other respects, I concur.

**WERDEGAR, J.**

4

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** State of California ex rel. Department of California Highway Patrol v. Superior Court
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 220 Cal.App.4th 612
**Rehearing Granted**

_____

**Opinion No.** S214221
**Date Filed:** February 26, 2015
_____

**Court:** Superior
**County:** Orange
**Judge:** Robert J. Moss

_____

**Counsel:**

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Chief Assistant Attorney General, Kristin G. Hogue, Assistant Attorney General, Alberto L. Gonzalez and Joel A. Davis, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Allred, Maroko & Goldberg, Michael Maroko and John S. West for Real Parties in Interest.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Joel A. Davis
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2130

John S. West
Allred, Maroko & Goldberg
6300 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90048
(323) 653-6530