Filed 12/21/23

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| HANAH KEREN SAMSON YALUNG, Individually and as Administrator, etc., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> STATE OF CALIFORNIA, <br><br> Defendant and Respondent. | F084367 <br><br> (Super. Ct. No. VCU287364) <br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County. Nathan D. Ide, Judge.

Ellis Riccobono, Tobin Ellis, Santo Riccobono; Salhab Law Corporation, Sam A. Salhab; Esner, Chang, Boyer & Murphy, Holly N. Boyer, Kevin K. Nguyen for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Pamela J. Holmes, Acting Assistant Attorney General, Iveta Ovsepyan, Cheryl W. Hsu and Gary Ostrick, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

"The In-Home Supportive Services (IHSS) program (Welf. & Inst. Code,[1] § 12300 et seq.) authorizes certain disabled and elderly Californians to receive in-home services from third parties or family members, paid for with public funds." (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 8 (*Skidgel*).) One program option, which we refer to as the "direct hiring" method, allows service recipients to directly hire their own providers, who are paid either by the recipients with funds they receive from a public entity or by a public entity itself. (*Ibid.*)

One day while working as an IHSS provider, Sara Spagnolini allegedly ran a stop sign and crashed into a car with six occupants. The driver, Hanah Keren Samson Yalung, and four of her children were seriously injured, and a fifth child was killed. Yalung, individually and as an administrator of her deceased daughter's estate and guardian ad litem for her other children[2] (collectively, plaintiffs) sued various entities for Spagnolini's negligence, including the State of California, by and through the State Department of Social Services (DSS) and State Department of Health Care Services (DHCS) (erroneously sued as State of California In-Home Supportive Services) (collectively, the State). Plaintiffs' first amended complaint alleged the State was liable for Spagnolini's negligence as her employer or as a joint employer with Spagnolini's recipient under the IHSS program.

The trial court sustained the State's demurrer to the first amended complaint without leave to amend. The trial court explained it could not find the statutory scheme made the State the employer or joint employer of IHSS providers for all purposes, noting that no cases held the State was an employer for purposes of vicarious liability.

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]    The plaintiffs are Hanah Keren Samson Yalung, individually and as administrator of the estate of Francine Salazar and guardian ad litem for minors, Aiden James Blakely, Eric Jeffrey Blakely, Lucas John Blakely, and Sadie Rose Blakely.

On appeal, plaintiffs contend the trial court erred in sustaining the demurrer. They argue the State may be a joint employer of IHSS providers under the IHSS program and the issue is a factual one that cannot be resolved on demurrer. We conclude, however, that the IHSS statutes are incompatible with a finding of joint employment as a matter of law. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The First Amended Complaint*

Plaintiffs commenced this action in May 2021, naming as defendants the County of Kern (County), the County of Kern In-Home Supportive Service Public Authority (Public Authority), the DSS and DHCS.[3] The operative first amended complaint filed in November 2019 alleged the following.

On August 7, 2019, Yalung was driving with her five children in the car. After they entered an intersection with a four-way stop, Sara Spagnolini, who was driving over the speed limit, ran a stop sign and crashed into the rear portion of Yalung's car. Yalung's 10-year-old daughter, Francine, passed away after sustaining fatal injuries, while Yalung and her other children sustained serious injuries. At the time of the accident, Spagnolini, who was uninsured, was employed as an IHSS provider for an IHSS recipient who lived in Bakersfield. Spagnolini, who was authorized to run errands for the recipient, was returning a vacuum for the recipient at the time of the accident.[4]

---

[3] The County was erroneously sued as the Kern County Aging and Adult Services and the Public Authority was erroneously sued as the County of Kern – In-Home Supportive Services. The County and State defendants filed separate demurrers to the original complaint. The demurrer filed by the County and Public Authority was sustained with leave to amend before plaintiffs opposed the State's demurrer. Consequently, the State's demurrer became moot.

[4] The State filed a request for judicial notice on April 5, 2023, asking us to judicially notice numerous documents filed in two criminal cases brought against Spagnolini with respect to the accident. On October 2, 2023, the State filed a motion to modify the prior request for judicial notice. The State now asks us to judicially notice only the certified felony and misdemeanor complaints from those cases, as well as minute

3.

The first amended complaint alleged three causes of action against all defendants: (1) wrongful death; (2) negligence and breach of statutory duties; and (3) survival. As applicable here, plaintiffs alleged DSS and DHCS were liable for Spagnolini's negligence because they were her employer or joint employer, and at the time of the accident, Spagnolini was operating her vehicle in the course and scope of her employment as an IHSS provider.

***The Demurrer***

The State demurred to the first amended complaint. As pertinent here, the State argued plaintiffs failed to allege sufficient facts that an employment or joint employment relationship existed between Spagnolini and DSS or DHCS at the time of the accident. The State asserted neither entity could be vicariously liable for Spagnolini's conduct as they did not have the statutory authority to control the means and manner of the services rendered by IHSS providers.

In their opposition, plaintiffs contended they adequately pled that Spagnolini was the State's employee. Plaintiffs noted that multiple courts had concluded the control exercised by State and county entities over IHSS providers is sufficient to support allegations of an employment relationship. They asserted there was no question the State and county defendants exercised considerable control over the initial investigation and approval process for IHSS providers, many other factors demonstrated the State had an employment relationship with Spagnolini, and the county defendants' conduct in

orders that show Spagnolini pled nolo contendere to the charges. The State asserts these documents are relevant to show that assuming there is an employer-employee relationship between Spagnolini and the State, Spagnolini was acting outside the duty and scope of her employment when the accident occurred. The State, however, does not make any argument in its respondents' brief on this issue. Accordingly, we deny both the April 5, 2023 request for judicial notice and the October 2, 2023 motion to modify the request for judicial notice as the documents from the criminal cases are irrelevant to the issues on appeal.

maintaining Spagnolini's timesheets and specifying the work she was authorized to perform was imputed to the State.

In reply, the State argued the IHSS statutory scheme did not allow plaintiffs' claims against an IHSS provider to be imputed to the State because Spagnolini cannot be deemed a State employee. The State asserted the cases plaintiffs cited were distinguishable and they had not pled facts demonstrating the State had the means to hire, fire, or control the means and manner of the services Spagnolini rendered to her IHSS recipient.

Following a hearing, the trial court sustained the State's demurrer on the issue of vicarious liability without leave to amend. The trial court determined the cases plaintiffs relied on did not indicate the State is considered the employer of an IHSS provider for claims other than wage claims under the Fair Labor Standards Act or workers compensation coverage. The trial court subsequently entered an "ORDER RE DISMISSAL" of this action as to the State.[5]

## DISCUSSION

Plaintiffs contend the trial court erred in sustaining the State's demurrer because they adequately alleged the State was Spagnolini's employer and therefore it is vicariously liable for her alleged negligence. They argue the case law and statutes that govern the IHSS program show the State may be an employer or dual employer of IHSS providers for purposes of vicarious liability. The State responds that a recent California Supreme Court decision and the statutory scheme for the IHSS program show that it cannot be vicariously liable as a matter of law. As we shall explain, we conclude the

---

[5] The trial court dismissed the first amended complaint as to the County and Public Authority after sustaining their demurrer to the first amended complaint on the theory of vicarious liability without leave to amend. On appeal, plaintiffs are not challenging this ruling as to the County and Public Authority.

5.

IHSS statutes are incompatible with a special employment relationship between the State and IHSS providers.

## I.     The Standard of Review

"A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) "When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any possible legal theory." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242.) "When conducting this independent review, appellate courts 'treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' " (*Esparza v. Kaweah Delta Dist. Hospital* (2016) 3 Cal.App.5th 547, 552.) We may also consider matters subject to judicial notice and will affirm the judgment if any ground for the demurrer is well taken. (*Ramirez v. Tulare County Dist. Attorney's Office* (2017) 9 Cal.App.5th 911, 924.) " ' "We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale." ' " (*Ibid.*)

A complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1).) This fact-pleading requirement requires the plaintiff to allege *ultimate* facts that apprise the defendant of the claim's factual basis. (*Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 415.) Stated another way, the "complaint must allege the ultimate facts necessary to the statement of an actionable claim." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1390.)

## II.     The IHSS Program

Since the State contends the statutes that govern the IHSS program are dispositive here, we describe in some detail the IHSS Program and its implementation in Kern County.

"IHSS is a social welfare program that, through a combination of state and federal funding, provides in-home supportive care for aged, blind, and disabled persons. [Citation.] It 'is specifically "designed to avoid institutionalization of incapacitated persons." [Citation.] Providers perform nonmedical supportive services for IHSS recipients, such as domestic services, personal care services, protective supervision, and accompaniment to health-related appointments.' " (*Skidgel*, *supra*, 12 Cal.5th at p. 11.)

DSS " 'administers the IHSS program in compliance with state and federal law' and 'promulgates regulations to implement the relevant statutes.' " (*Skidgel*, *supra*, 12 Cal.5th at p. 11.) Those regulations are set out in its Manual of Policies and Procedures: Social Services Standards (July 2019) (MPP), sections 30-700 to 30-785. (*Reilly v. Marin Housing Authority* (2020) 10 Cal.5th 583, 588.) "Counties 'administer[] the program locally on behalf of the state in accordance with the statute[s] and state regulations establishing a uniform range of services available to all eligible recipients.' " (*Skidgel*, *supra*, 12 Cal.5th at p. 11.)[6]

"Each county is obligated to ensure that services are provided to all eligible recipients during each month of the year in accordance with the county plan." (§ 12302.) To implement that plan, counties may: (1) hire IHSS providers through county employment; (2) contract with various public and private entities or individuals; or (3) directly pay a recipient for the purchase of services. (*Ibid.*) Notwithstanding

---

[6]    "For example, DSS identifies specific services authorized under the IHSS program (Welf. & Inst. Code, § 12301.1, subd. (a); [MPP], § 30-757.1) and creates standardized 'hourly task guidelines' and a 'uniform needs assessment tool' for county use in assessing individual servicer needs and service-hour requirements. (Welf. & Inst. Code, §§ 12301.2, subd. (a)(1), 12309; see [MPP], §§ 30-756, 30-757, 30-761, 30-763.) Following DSS guidelines and protocols, counties process applications for IHSS services, assess applicants' service needs, authorize services and service hours, and periodically reassess recipients' needs. (Welf. & Inst. Code, §§ 12301.1, subd. (b), 12301.15-12301.17, 12301.2, subd. (b), 12301.21, subd. (b); [MPP], §§ 30-759, 30-761, 30-763.)" (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2018) 24 Cal.App.5th 574, 578–579, affd., *Skidgel*, *supra*, 12 Cal.5th 1.)

sections 12302 and 12302.1, which concerns contracts a county enters into under section 12302, a county board of supervisors may elect to provide for the delivery of in-home supportive services by either (1) contracting with a nonprofit consortium, or (2) establishing a public authority by ordinance.  (§ 12301.6, subd. (a).)

Here, the County chose to establish Public Authority to provide for the delivery of services.  (Kern County Mun. Code, § 2.140.020 (Ord. G-6877 § 2 (part), 2002.)  Public Authority has the power to contract for services pursuant to sections 12302 and 12302.1 and to make or provide for direct payment to a provider chosen by the recipient for the purchase of services pursuant to sections 12302 and 12302.2.  (Kern County Mun. Code, § 2.140.070; § 12301.6, subd. (d).)

Section 12302.2 specifies that when a county provides for direct payment to an IHSS provider chosen by a recipient, DSS "shall perform or ensure the performance of all rights, duties, and obligations of the recipient relating to [IHSS] services as required for [various] purposes," such as "unemployment compensation" and "workers' compensation."  (§ 12302.2, subd. (a)(1).)  Those "rights, duties, and obligations" include "withholding in trust from the payments made to or on behalf of a recipient amounts to be withheld from the wages of the provider by the recipient as an employer" and "transmitting those amounts along with amounts required for all contributions, premiums, and taxes payable by the recipient as the employer to the appropriate person or state or federal agency."  (§ 12302.2, subd. (a)(1).)  Establishment of a public authority under section 12301.6 "does not affect the state's responsibility with respect to the state payroll system, unemployment insurance, or workers' compensation and other provisions of Section 12302.2 for providers of in-home supportive services."  (§ 12301.6, subd. (i)(1).)

Public Authority maintains a registry to help recipients find providers, investigates the qualifications and background of potential providers, establishes a referral system under which providers are referred to recipients, and provides training for providers and recipients.  (Kern County Mun. Code, § 2.140.090(A).)  Prospective providers must

complete an in-person orientation, where they review DSS-developed training materials and sign a statement specifying the provider, among other things, (1) agrees to cooperate with state or county staff to provide any information necessary to assess or evaluate a case, (2) understands and agrees to program expectations and is aware of the measures the state or county may take to enforce program integrity, and (3) understands failure to comply with program rules and requirements may result in the provider being terminated from providing IHSS services.  (§ 12301.24, subds. (a) & (b).)

Counties carry out "quality assurance" (fraud detection and prevention), including provider background checks and orientations and potential unannounced home visits to confirm service delivery.  (§§ 12301.24, 12305.7-12305.87; MPP § 30-702.)  DHCS and counties have the authority to investigate fraud in the provision or receipt of IHSS. (§ 12305.82, subds. (a) & (c).)  If DHCS "concludes that there is reliable evidence that a provider or recipient of supportive services has engaged in fraud in connection with the provision or receipt of in-home supportive services, the [DHCS] shall notify [DSS], the county, and the county's public authority or nonprofit consortium, if any, of that conclusion."  (§ 12305.82, subd. (c).)  The failure of a provider "to comply with program requirements may result in termination of his or her participation" in the IHSS program. (§ 12305.82, subd. (f).)

Public Authority is "deemed to be the employer" of  IHSS providers for purposes of collective bargaining.  (§ 12301.6, subd. (c)(1); accord, Kern County Mun. Code, § 2.140.110.)  Nevertheless, "[r]ecipients … retain the right to hire, fire, and supervise the work of any in-home supportive services personnel providing services to them." (*Ibid.*; see Kern County Mun. Code, § 2.140.110 [Public Authority has "no authority or jurisdiction to regulate, control or limit the rights and responsibilities of recipients of in-home supportive services to hire, fire or supervise providers"].)

A recipient is responsible for directing authorized services for purposes of weekly overtime pay.  (§ 12300.4, subds. (a) & (b)(4)(B).)  A provider may not work more than

9.

66 hours in a workweek. (§ 12300.4, subd. (b)(2).) DSS or a county may terminate the provider for violating the hourly workweek limitations of section 12300.4. (§ 12300.4, subd. (b)(5).) Recipients must sign providers' timesheets to verify authorized services provided. (MPP, § 30-769.723.) Although DSS issues checks, counties review providers' timesheets and authorize the state's disbursement of funds. (MPP, § 30-769.241, subd. (c).)

Public Authority is "deemed not to be the employer of in-home supportive services personnel … referred to recipients … for purposes of liability due to the negligence or intentional torts of the in-home supportive services personnel." (§ 12301.6, subd. (f)(1).) It also "is not liable for the action or omission of any in-home supportive services personnel … whom the … public authority did not list on its registry or otherwise refer to a recipient." (§ 12301.6, subd. (f)(2).) Moreover, counties and the state are "immune from any liability resulting from their implementation of [section 12301.6] in the administration of the In-Home Supportive Services program." (§ 12301.6, subd. (f)(3).)

## III. Joint Employer Status in the IHSS Program

" 'Under the doctrine of respondeat superior, an employer is vicariously liable for his employee's torts committed within the scope of the employment.' " (*Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1178.) " 'The primary test of an employment relationship is whether the " 'person to whom service is rendered has the right to control the manner and means of accomplishing the result desired ….' " ' " (*Id.* at pp. 1178–1179.) In the context of vicarious liability " 'the "control of details" test' had long been 'the principal measure of the servant's status for common law purposes.' " (*Becerra v. McClatchy Co.* (2021) 69 Cal.App.5th 913, 930 (*Becerra*), quoting *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350.)

Multiple persons can employ an individual and be vicariously liable for the employee's torts. "Under the common law, a special employment relationship arises

when a ' "general" employer … lends an employee to another employer and relinquishes to [the] borrowing employer all right of control over the employee's activities.' [Citation.] … Nevertheless, not all special employment relationships are exclusive. 'Where general and special employers share control of an employee's work, a "dual employment" arises, and the general employer remains concurrently and simultaneously, jointly and severally liable for the employee's torts.' " (*State ex rel. Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1008 (*State ex rel. CHP*); see *Garton v. Title Ins. & Trust Co.* (1980) 106 Cal.App.3d 365, 376 [fact that a defendant was employed by one entity "does not preclude the possibility that, for the particular transactions in question, [the defendant] was acting as an agent or employee of [another entity] as well"].)

In the first amended complaint, plaintiffs alleged DSS and DHCS were Spagnolini's "employer and/or joint employer[s]," and at the time of the accident, Spagnolini "was jointly employed by Defendants" and "was operating her vehicle in the course and scope of her employment." The issue here is whether an IHSS provider that is employed by an IHSS recipient also qualifies as a special employee of the State for purposes of vicarious liability when, as here, a county or public authority uses the direct hiring method.

"Under the Government Claims Act, a public entity is *not* liable '[e]xcept as otherwise provided by statute.' " (*State ex rel. CHP*, *supra*, 60 Cal.4th at p. 1009, quoting Gov. Code, § 815.) "The Government Claims Act includes a broad provision for liability in respondeat superior: 'A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee….' (Gov. Code, § 815.2, subd. (a).) Public employees are liable for their torts 'to the same extent' as private persons, absent statutory provision to the contrary. (Gov. Code, § 820, subd. (a).) Thus, public entities

11.

are generally liable for the torts of their employees to the same extent as private employers." (*State ex rel. CHP*, at p. 1009.)  The term " '[e]mployee' includes an officer, … employee, or servant, whether or not compensated, but does not include an independent contractor."  (Gov. Code, § 810.2.)

Plaintiffs argue Spagnolini is an employee of the State under the principles of respondeat superior.  Under the IHSS statutes, providers are employees for some, but not all, purposes.  (*Basden v. Wagner* (2010) 181 Cal.App.4th 929, 940.)  Each county acts as an employer of IHSS providers for purposes of state public employee-employer relations laws (§ 12302.25, subd. (a)), but the county is not deemed to be the provider's employer for purposes of liability due to the provider's negligence or intentional torts (§ 12301.6, subds. (c)(1), (c)(2)(A), (f)(1)).  (*Basden*, at p. 940.)  The IHSS statutes, however, do not set forth similar parameters for the State.

Authorities addressing whether IHSS providers are employees of the state and counties in addition to employees of the recipients they work for under the direct hiring method have reached differing conclusions depending on the context.  In 1983, the Ninth Circuit Court of Appeals held that in counties providing funds to recipients to pay their own IHSS providers, the state and counties were joint employers with recipients for purposes of the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.) and thus liable for FLSA violations.  (*Bonnette v. California Health & Welfare Agency* (9th Cir. 1983) 704 F.2d 1465, 1467–1468 (*Bonnette*), disapproved on other grounds by *Garcia v. San Antonio Metro. Transit Auth.* (1985) 469 U.S. 528, 539.)[7]

---

[7]     The Ninth Circuit concluded the appellants were the providers' employers "under the FLSA's liberal definition of 'employer,' " as they exercised considerable control over the nature and structure of the employment relationship and had complete economic control over the relationship.  (*Bonnette*, *supra*, 704 F.2d at p. 1470.)  The court explained that in FLSA cases, the determination of whether an employer-employee relationship exists depends on the circumstances of the whole activity, with the "touchstone" being " 'economic reality.' "  (*Bonnette*, at p. 1469.)  The court concluded the following factors showed the appellants were the providers' employers:  (1) the

In 2013, a California appellate court relying on *Bonnette* held a county and public authority using the direct payment method may be joint employers with an IHSS recipient under the FLSA and state wage and hour laws. (*Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 924, 937, 945–951 (*Guerrero*).) After reviewing the four factors the Ninth Circuit applied in *Bonnette*, the appellate court determined the relationship between recipient and provider had not changed since *Bonnette* was decided. (*Guerrero*, at pp. 936–937.) The appellate court concluded the " 'economic reality' " was that the county, public authority, and state exercised " 'considerable control over the structure and conditions of employment, by making the final determination, after consultation with the recipient, of the number of hours each [provider] would work and exactly what tasks would be performed' in order to receive payment authorized under the IHSS program." (*Id.* at p. 937.)

In 1984, another California appellate court held that the state, by virtue of its actions and the action of the county as its agent, was a dual employer with IHSS recipients for purposes of workers' compensation coverage. (*In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 729–730 (*In-Home Supportive Services*).) The appellate court viewed the state's role "as the principal

---

appellants paid the providers either directly or indirectly through the recipients; (2) the appellants controlled the rate and method of payment and maintained employment records; (3) the appellants exercised "considerable control over the structure and conditions of employment by making the final determination, after consultation with the recipient, of the number of hours each [provider] would work and exactly what tasks would be performed"; and (4) although recipients were responsible for day-to-day supervision of the providers, appellants intervened when problems arose which the recipient and provider could not resolve. (*Id.* at pp. 1469–1470.)

In a recent decision, the Ninth Circuit Court of Appeals concluded *Bonnette*'s holding that counties are joint employers of IHSS providers continued to apply to a county that providers were suing for unpaid overtime under the FLSA. (*Ray v. Los Angeles County Department of Public Social Services* (9th Cir. 2022) 52 F.4th 843, 845, 847–851.)

having ultimate direction and control of the IHSS program by virtue of its authority to supervise the program and through the supervision and control of the counties acting as its agent," with "[t]he county's exercise of its supervisory and other powers over the IHSS program" imputed to the state. (*Id.* at p. 729.)

The appellate court determined the "scheme of engagement of individuals by the state, through its agents, to perform IHSS services for recipients required by state regulations establishes an employment relationship," and the county "has the right to sufficient control over the IHSS provider to make the state chargeable, by virtue of the agency relationship with the state, as *an* employer."[8] (*In-Home Supportive Services*, *supra*, 152 Cal.App.3d at p. 731.) The appellate court emphasized in a footnote that "this conclusion is grounded on the definition of employee for workers' compensation coverage and has no necessary application to dissimilar contexts, e.g. respondeat superior." (*Id.* at p. 732, fn. 12.)

In 1985, the Attorney General provided an opinion for a state legislator on whether, when the recipient hires and supervises the provider, the state or county are joint employers with the recipient for other purposes, such as unemployment insurance, disability insurance, collective bargaining, health insurance and other employee benefits. (68 Ops.Cal.Atty.Gen. 194 (1985).) With respect to unemployment insurance, the Attorney General, reasoning that since joint employment was not recognized in the

---

[8]     In deciding whether the provider was the state's employee, the court applied the definition of employee found in Labor Code section 3351.5, subdivision (b), which "contains two sentences. [1] An employee '*includes*': '[a]ny person defined in subdivision (d) of [Labor Code] Section 3351 who performs domestic service comprising in-home supportive services …. [2] For purposes of [Labor Code] Section 3352, such person shall be deemed an employee of the recipient of such services for workers' compensation purposes if the state or county makes or provides for direct payment to such person or to the recipient of in-home supportive services for the purchase of services, subject to the provisions of Section 12302.2 of the Welfare and Institutions Code." (*In-Home Supportive Services*, *supra*, 152 Cal.App.3d at p. 737.)

14.

unemployment insurance context and Unemployment Insurance Code section 683 expressly defines a recipient as the employer for purposes of computing unemployment benefits, concluded the recipient was the sole employer. (68 Ops.Cal.Atty.Gen. at p. 198.)

In *Skidgel*, our Supreme Court held that where the IHSS recipients directly hire their own providers who are paid under the direct payment method, providers who are the recipient's minor child, parent, or spouse are not covered by the state's unemployment insurance program. (*Skidgel*, *supra*, 12 Cal.5th at pp. 8–9.) In so holding, the Supreme Court determined the state was not the providers' dual employer because Unemployment Insurance Code section 683[9] designates the recipient as the provider's sole employer for purposes of unemployment insurance coverage in the direct hiring context, with recipient's legal duties as employer being the state's responsibility as set forth in section 12302.2, subdivision (a)(1). (*Skidgel*, *supra*, 12 Cal.5th at pp. 15, 17.)

The Supreme Court explained that in the 1970's the Legislature expanded eligibility for unemployment and workers' compensation benefits to include domestic employees, including IHSS providers, but it was not clear who the employer was for purposes of those programs. (*Skidgel*, *supra*, 12 Cal.5th at p. 17.) To address the concern that counties would abandon the direct hiring method because they would be considered the employer, in 1978 the Legislature enacted several provisions, including Unemployment Insurance Code section 683 and Welfare and Institutions Code section 12302.2, which designated the recipient as the employer and the state assuming

---

[9]     Unemployment Insurance Code section 683 states in relevant part:  " 'Employer' also means any employing unit" that employs individuals to perform IHSS services and "is one of the following:  [¶] (a) The recipient … if the state or county makes or provides for direct payment to a provider chosen by the recipient or to the recipient … for the purchase of services, subject to the provisions of Section 12302.2 of the Welfare and Institutions Code.  [¶] (b) The individual or entity with whom a county contracts to provide in-home supportive services.  [¶] (c) Any county which hires and directs in-home supportive personnel in accordance with established county civil service requirements or merit system requirements for those counties not having civil service systems."

collection and remittance of payroll taxes.[10]  (*Skidgel*, *supra*, 12 Cal.5th at p. 18.)  Thus, in the direct hiring context, the recipient is the sole employer, and the costs of unemployment insurance are shifted to the state.  (*Ibid.*)  The Supreme Court rejected the argument that the state's handling of the payroll function as specified in section 12302.2 makes the state the employer for unemployment insurance purposes, as "the statute expressly specifies that in paying or transmitting '[c]ontributions, premiums, and taxes,' the state is acting 'on the recipient's behalf as the employer' ([§ 12302.2], subd. (a)(2)) or 'as an employer' ([§ 12302.2], subd. (c)), and not as an employer in its own right." (*Skidgel*, *supra*, 12 Cal.5th at pp. 22–23.)

These cases show that whether the State is a joint employer of IHSS providers in the direct hiring context varies based on the statutory scheme involved, whether wage and hour law, workers' compensation, or unemployment insurance.  The issue here, however,

---

**10**    On April 5, 2023, the State filed a request for judicial notice of the legislative materials concerning these 1978 amendments, specifically the legislative history of Assembly Bill Nos. 644 and 3028, which consist of approximately 841 and 161 pages, respectively.  The State asserts these materials provide a historical background for the statutory scheme of the IHSS program and shed light on the legislators' intent in enacting the program and whether they intended for IHSS to be deemed State employees.

On October 2, 2023, the State filed a motion to modify the request to judicially notice only two reports that it cited in its respondents' brief:  (1) an Employment Development Department memorandum concerning Assembly Bill No. 3028, dated June 29, 1978; and (2) an Assembly Committee on Ways and Means staff analysis of Assembly Bill No. 3028, as amended June 8, 1978.

We deny the April 5, 2023 request to take judicial notice of all the legislative materials, as they include notes, letters to assemblymembers from various organizations urging support of or opposition to the bills, and legislative analyses from various committees, and are not authenticated.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45–46, fn. 9 [denying request for judicial notice of unauthenticated legislative materials which included materials not shown to have been available to and presumably reviewed by the Legislature when the statutes were adopted].)  Moreover, the State does not discuss most of the materials and therefore does not demonstrate their relevance.  However, we grant the October 2, 2023 motion and judicially notice the two reports attached to that motion as exhibits one and two.

is whether the State may be held vicariously liable for the negligent or intentional torts of providers because it has an employment relationship with the providers.

The Supreme Court's opinion in *State ex rel. CHP* is instructive on how to analyze this issue. There, the Supreme Court examined whether a tow truck driver who was involved in an accident while providing services under the Freeway Service Patrol (FSP) Act qualified as an employee of the California Highway Patrol (CHP) under Government Code section 815.2. (*State ex rel. CHP*, *supra*, 60 Cal.4th at pp. 1007–1008, 1009.) The plaintiff, who sued various entities including the CHP for injuries sustained in the accident, argued the tow truck driver was a CHP employee because he was the CHP's "servant" as defined in Government Code section 810.2. (*State ex rel. CHP*, at p. 1009.)

The court's consideration of this claim was "limited to whether the roles set out in the FSP statutes are consistent with a special employment relationship between CHP and tow truck drivers," and the court concluded they were not. (*State ex rel. CHP*, *supra*, 60 Cal.4th at p. 1009.) The court first explained the FSP statutes defined the term "employer" and while the CHP could fall under one part of that definition, it was clear from other FSP statutes "that the Legislature did not consider CHP to be an organization that employs tow truck drivers." (*Id.* at p. 1010.) The court rejected the plaintiff's contention that the common law test of employment applied because the Legislature "used the term 'employer' merely for purposes of allocating administrative responsibilities within the FSP program." (*Id.* at p. 1011; see *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500 [common law test of employment applies when a statute refers to employees without defining the term].) The court explained since the FSP statutes defined "employer" and gave it "a special meaning that does not apply to CHP," the common law test of employment did not apply, noting that where the Legislature expressly defines a term, " 'that definition ordinarily is binding on the courts.' " (*State ex rel. CHP*, at p. 1011.)

17.

The court also rejected the plaintiff's argument that the statutory definition could be read to apply only to tow truck providers as general employers without affecting CHP's tort liability as a special employer. (*State ex rel. CHP*, *supra*, 60 Cal.4th at p. 1011.) The court found nothing in the statute that defined the term employer indicated the Legislature distinguished general from special employment and "[t]he more reasonable view, assuming the Legislature had common law employment principles in mind when it established the FSP program, is that it meant to protect CHP from vicarious liability as an 'employer' by excluding it from the definition provided" in the statute. (*Ibid.*)

The court also determined the CHP's role as laid out in the FSP statutes did not match the criteria for special employment. (*State ex rel. CHP*, *supra*, 60 Cal.4th at p. 1012.) The court noted the primary factor in determining any employment relationship is the "right to control job performance." (*Ibid.*) The court concluded the CHP's roles were essentially governmental and because CHP's right to control some aspects of towing operations "arises not from an employment relationship, but from CHP's mission as the government agency most directly responsible for ensuring highway traffic safety," that right to control "does not confer upon it the status of a special employer." (*Id.* at pp. 1012–1013.) The court also examined the factors secondary to right of control and found them "truly secondary … given our conclusion that the primary factor, the right of control, weighs firmly against a finding of special employment." (*Id.* at p. 1014.) The court held "the language of the statutory scheme does not support a finding that CHP is the special employer of FSP tow truck drivers." (*Id.* at p. 1015.) The court, however, concluded that because its holding did not eliminate the possibility that the CHP might act as a special employer if it takes on responsibilities beyond those outlined in the FSP statutes, the trial court was required to determine whether the facts of the case might nevertheless support liability. (*Ibid.*)

Applying the rationale of *State ex rel. CHP* here, we look first to whether the term "employer" is defined in the applicable statutes. The term employer is not defined in the statutes that govern the IHSS program as set forth in the Welfare and Institutions Code, other than to state that counties are deemed to be employers for purposes of collective bargaining but not for purposes of liability due to the negligence or intentional torts of IHSS providers. In Unemployment Insurance Code section 683, the Legislature designated the recipient as the provider's sole employer for purposes of unemployment insurance coverage in the direct hiring context. In Labor Code section 3351.5, subdivision (b), however, the Legislature declared that for purposes of workers' compensation, the provider "shall be deemed an employee of the recipient," which the *In-Home Supportive Services* court interpreted as providing "not [that] the IHSS recipient is '*the only*' employer of the IHSS worker," but that "the recipient is '*an*' employer of the worker." (*In-Home Supportive Services*, *supra*, 152 Cal.App.3d at p. 740, fn. 26.)

These statutes, which are in apparent conflict, inform whether the State is the employer of IHSS providers for purposes of vicarious liability. We need not resolve which definition applies here because, when these definitions are viewed in the context of the State's role as laid out in the IHSS statutes, it is apparent that the State's role does not match the criteria for special employment. As the Supreme Court explained in *State ex rel. CHP*: "It is settled that the right to control job performance is the primary factor in determining any employment relationship, including special employment. 'The special employment relationship and its consequent imposition of liability upon the special employer flows from the borrower's power to supervise the details of the employee's work.' " (*State ex rel. CHP*, *supra*, 60 Cal.4th at p. 1012; see *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 531 [" ' "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired" ' "].)

19.

There is nothing in the IHSS statutory scheme, however, to suggest the State has the power to supervise the details of the work of IHSS providers. The DSS's role is to administer " 'the IHSS program in compliance with state and federal law' " and to promulgate " 'regulations to implement the relevant statutes.' " (*Skidgel*, *supra*, 12 Cal.5th at p. 11.) The DHCS is empowered to investigate fraud in the provision or receipt of IHSS services, and to report any reliable evidence of fraud to the DSS, county, and the county's public authority. (§ 12305.82, subds. (a) & (c).) An agency, however, does not become a special employer merely by ensuring compliance with statutory, regulatory, or contractual requirements. (*State ex rel. CHP*, *supra*, 60 Cal.4th at p. 1012.)

The State also has an "expressly designated role" to " 'perform or ensure the performance of all rights, duties, and obligations' that otherwise would be the legal responsibility '*of the recipient*' in the Direct Hiring context, including the duties of '*the recipient as an employer*' to withhold specified amounts 'from the wages of the provider' and to 'transmit[] those amounts along with amounts required for all contributions, premiums, and taxes payable by *the recipient as the employer* to the appropriate person or state or federal agency.' " (*Skidgel*, *supra*, 12 Cal.5th at p. 17, quoting § 12302.2, subd. (a)(1).) As explained in *Skidgel*, while this statute makes the State responsible for the recipient's legal duties as employer, it does not make the State a joint employer with the recipient as the State is merely performing the duties of the recipient as the employer. (*Skidgel*, at p. 17.)

The common law also recognizes factors secondary to the right of control. (*State ex rel. CHP*, *supra*, 60 Cal.4th at p. 1013.) These include: " ' "(a) [W]hether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the

length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." ' " (*State ex rel. CHP*, *supra*, 60 Cal.4th at pp. 1013–1014.)  In addition, certain circumstances tend to negate the existence of a special employment, such as when " '[t]he employee is (1) not paid by and cannot be discharged by the borrower, (2) a skilled worker with substantial control over operational details, (3) not engaged in the borrower's usual business, (4) employed for only a brief period of time, and (5) using tools and equipment furnished by the lending employer.' " (*Id.* at p. 1014.)

These considerations became secondary, however, where, as here, the primary factor, right of control, weighs firmly against a finding of special employment.  (*State ex rel. CHP*, *supra*, 60 Cal.4th at p. 1014.)  Nevertheless, we observe that in the direct hiring context the State pays the providers only on behalf of the recipients as the employer; the providers perform their work under the recipient's supervision and direction; and the State does not supply the instrumentalities, tools, or place of work.  Moreover, the State does not select the individual providers to work for the recipients; instead, recipients hire their providers, supervise their work, and are free to replace a provider with another one. (*Ibid.* [noting "special employment is not indicated when ' "the general employer may at any time substitute another servant" ' "].)  Although the State may intervene in the employment relationship when there is fraud or overtime violations, there is nothing to suggest the State has the right to discharge a provider without cause.  (*Ayala v. Antelope Valley Newspapers, Inc.*, *supra*, 59 Cal.4th at p. 531 ["[p]erhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause"].)

Plaintiffs assert the cases of *Bonnette*, *In-Home Supportive Services*, and *Guerrero* show that the State has control and power over the IHSS program.  But none of those cases analyzed whether the State may be considered a joint employer for purposes of

21.

vicarious liability.  *Bonnette* and *Guerrero* both addressed whether the State was an employer under the FLSA's broad definition of employer, which "is not limited by the common law concept of 'employer,' and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."  (*Bonnette*, *supra*, 704 F.2d at p. 1469; accord, *Guerrero*, *supra*, 213 Cal.App.4th at p. 928.)  And as we have noted, the court in *In-Home Supportive Services* expressly stated that its conclusion that the State was a joint employer of providers was limited to workers' compensation and did not necessarily apply to a dissimilar context such as respondeat superior.  (*In-Home Supportive Services*, *supra*, 152 Cal.App.3d at p. 732, fn. 12.)

We further note that in *In-Home Supportive Services*, the appellate court found the state was a joint employer because its role in the IHSS program is that of a principal that ultimately directs and controls the IHSS program with the counties acting as the state's agent and the counties' exercise of their supervisory and other powers over the IHSS program imputed to the state.  (*In-Home Supportive Services*, *supra*, 152 Cal.App.3d at pp. 729–730.)  The appellate court concluded the employment relationship was established by the state engaging individuals through its agents to perform IHSS services for recipients as required by state regulations.  (*Id.* at p. 731.)

Assuming the State is exercising control over IHSS providers through the Public Authority, the Public Authority is "deemed not to be the employer" of IHSS providers who it refers to recipients "for purposes of liability due to the negligence or intentional torts of the in-home supportive services personnel" and is "not liable for the action or omission of any in-home supportive services personnel" who the Public Authority did not list on its registry or refer to a recipient.  (§ 12301.6, subd. (f)(1) & (2).)  Thus, even if the Public Authority has the right of control over IHSS providers, it is deemed not to be an employer of them.  If the Public Authority is not the employer for purposes of vicarious liability, we fail to see how the State could be vicariously liable based on the Public Authority's actions, even if authorized by statute or regulation.  After all, because

22.

a principal cannot be subjected to greater liability than its agent, if the agent is immune from suit, the principal is also immune. (See *Privette v. Superior Court* (1993) 5 Cal.4th 689, 699 [a principal is subject to no greater liability than its agent]; *Vesci v. Ingrim* (1961) 190 Cal.App.2d 419, 422 [where the principal's responsibility is based on his relationship to the agent, "a judgment exonerating the agent also releases the principal from responsibility"].)

Plaintiffs argue that any reliance on section 12301.6, subdivision (f)(1) to immunize the State from liability would insert a term into the statute that is not present. We recognize the statute lists only a "public authority" or "nonprofit consortium contracting with a county" as the entities deemed not to be the employer of IHSS providers for purposes of liability for their negligence or intentional torts. (§ 12301.6, subd. (f)(1).) But the State cannot be liable for a provider's torts based on the Public Authority's employment relationship with the provider if the Public Authority is not deemed to be the employer.[11]

---

[11] For this reason, plaintiffs' reliance on former sections 12300.5 and 12302.6, which expressly provided that the state shall not be deemed to be the employer of a provider who is employed by a recipient for purposes of liability due to the provider's negligence or intentional torts, is misplaced. Former section 12300.5 designated the California In-Home Supportive Services Authority, referred to as the Statewide Authority, as the entity authorized to meet and confer with recognized employee organizations representing individual IHSS providers, and provided the state with immunity from liability for individual providers' torts. (Stats. 2012, ch. 45, § 5, eff. June 27, 2012, amended by Stats. 2012, ch. 439, § 31, eff. Sept. 22, 2012, repealed by Stats. 2017, ch. 25, § 13, eff. June 27, 2017.) A similar immunity provision was enacted in former section 12302.6, which granted managed care health plans the ability to assume the authority granted counties to contract with an agency for the provision of in-home supportive services and was repealed by its terms effective January 1, 2018. (Former § 12302.6, subds. (c) & (*o*), added by Stats. 2012, ch. 45, § 8, eff. June 27, 2012, amended by Stats. 2012, ch. 439, § 35, eff. Sept. 22, 2012, and Stats. 2017, ch. 52, § 19, eff. July 10, 2017.)

Plaintiffs have asked us to take judicial notice of former section 12300.5, effective September 22, 2012 to June 26, 2017, and former section 12302.6, effective July 10, 2017 to December 31, 2017. As the former statutes are generally available from published sources, we deny the request as unnecessary and consider the request for

Plaintiffs assert there is no reason to differentiate tort claims for vicarious liability from workers' compensation or FLSA cases. But, in those other contexts, the courts did not address the State's "right to control the detailed manner and means by which the work was to be performed." (*Blackwell v. Vasilas* (2016) 244 Cal.App.4th 160, 168.) The State adopts regulations that establish "a uniform range of services available to all eligible recipients based upon individual needs," statewide hourly task guidelines, and a standardized tool to assess recipient needs. (*Guerrero*, *supra*, 213 Cal.App.4th at p. 922.) The State, however, does not determine what services an individual recipient will receive or the tasks a provider will perform for that recipient; neither does it direct how those tasks will be performed. Instead, the counties evaluate the recipients within the established guidelines and determine the amount and nature of services the recipient requires. (*In-Home Supportive Services*, *supra*, 152 Cal.App.3d at p. 731; §§ 12301.1, 12301.2.) The State simply has no ability to control or direct providers' day-to-day tasks or activities.

Plaintiffs argue that if the State is not vicariously liable for the negligence or intentional torts of IHSS providers committed within the scope of their employment, the only recourse for plaintiffs such as themselves would be the recipient, which is the party least likely to bear the cost of their provider's torts. The IHSS program, however, is a creature of statute and the language of the statutory scheme does not support a finding that the State is the special or joint employer of IHSS providers for purposes of vicarious liability. Moreover, there is nothing in the scheme that would allow the State to take on a role that would bring it within the scope of the special employment doctrine. Since there

---

judicial notice as a citation to the published materials. (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 440, fn. 18; *Quelimane Co. v. Stewart Title Guaranty Co.*, *supra*, 19 Cal.4th at pp. 45–46, fn. 9.)

is no basis for finding the State was an employer or joint employer of Spagnolini, the trial court did not err when it sustained the State's demurrer to the first amended complaint.**12**

## DISPOSITION

The order dismissing the action is affirmed. Costs on appeal are awarded to the State.



DE SANTOS, J.

WE CONCUR:


LEVY, Acting P. J.


POOCHIGIAN, J.

---

**12** Given our holding, we do not reach the issue the State raises for the first time on appeal, namely, whether it is immune from liability under section 12301.6, subdivision (f)(3), which provides that counties and the state are "immune from any liability resulting from their implementation of this section in the administration" of the IHSS program.